versus Xavier Becerra, Secretary of the United States Department of Health and Human Services et al. Can everybody hear me? Alright, yes I can hear you. Is that Mr., is that Corey? It's Corey, your honor. Thank you. Alright, you may proceed. Thank you. My name is Mike Corey. I am from Orange County, California where I've practiced in the trenches for about 40 years. My client is Regional Home Health Care. It's out of business now. It was a small home health care company located in southeastern Iowa in a town of about a thousand people. About a two and a half hour drive from where your St. Louis Cardinals usually beat up on my San Diego Padres. Well, counsel, you mentioned your client's out of business. Doesn't that address the District Court's opinion here under the Declaratory Judgment Act that there's no jurisdiction because you're looking to establish past rights and therefore either the case, there's no active case or the case is moot. Your honor, I doubt it. The government puts a business, especially a small business, out of business. But you're asking for declaratory judgment. You could certainly challenge the deficiency notice if I'm using the right terms there. In other words, the overpayment, excuse me. But you're asking for a declaratory judgment here. Your business is no longer in business. It's no longer viable. So, why isn't that moot? One of the causes of action is for declaratory judgment. That cause of action does not become moot because the government puts my client out of business. Otherwise, it would encourage the government through its private contractors to adopt policies to put businesses out of business. Or it would simply suggest not to file a declaratory judgment after the fact. Well, I disagree with your honor and the reason I disagree is because a declaratory judgment is there to resolve a controversy. And there is certainly a controversy over why my client is no longer in business serving the Medicare community in Southeastern Iowa. But, what has happened on the ground is that through its private contractors, the government has figured out a way to avoid being sued by making the administrative remedies so useless that people... Well, but counsel, sued for what? I mean, the overpayment determination you can sue for, is that correct or am I wrong on that? Um, I'm certainly not going to accuse the court of being wrong, but the overpayment... No, I mean, please, if I'm incorrect, let me know. My understanding is that you still have a judicial remedy, or at least you did have a judicial remedy for that overpayment determination and that's not what we're here on, is it? Or are we? No, I don't think we're here on that. In a perfect world where people can stay in business without cash flow, then you could wait until the administrative law hearing determines whether the overpayment determination was correct or incorrect. But we're not in a perfect world. My client was put out of business after about three months when the initial suspension came down. But no judicial remedy could prevent that, correct? In other words, there's no federal court that I'm aware of that can process that faster than the agency did. How many months was it before that suspension was lifted? Five months, approximately. I mean, do you know any federal district court that's going to handle a case in that amount of time? As a matter of fact, I do. I think you can get into federal district court and ask for a temporary restraining order. Well, but that's not what you did. You're asking for declaratory judgment here. One of the causes... After the fact. And again, I'm open to ideas. This is what I'm struggling with in this case. Okay. One of the causes of action is for declaratory relief. I think there are other causes of action under the Constitution, but I think the declaratory relief cause of action survives because the government put my client out of business and we're asking whether that act, which is a result of not having a hearing and having no administrative remedies, whether that act was appropriate or not appropriate. So are you talking now about the Eldridge and Michigan Academy exceptions? Is that where we're at at this point? I think that's exactly what we're talking about is the Illinois Council case and the Michigan Academy exceptions that talk about how if the administrative remedies are such that it precludes judicial review before some damage occurs, then all fact, yes, we don't need to exhaust our administrative remedies. Put it simply, there are no administrative remedies when it comes to being a Medicare provider, especially one who serves the Medicare community because their cash flow relies upon the billing of Medicare and the service of Medicare beneficiaries, which I just became one of. But regardless of that, the fact of the matter is that when a business doesn't have cash flow, it goes out of business, and that's exactly what happened to my client. To say that there's no case or controversy when my client goes out of business, has to figure out a way to support herself and her family. If that's not a case or controversy, I don't know what it is. The fact of the matter is that these private contractors, and this is something that I think maybe should have been briefed up, but really wasn't. These private contractors are exercising discretion as if they're the government, and they issue these rulings, just like a court would, suspending people from Medicare, cutting off their cash flow, putting them out of business, knowing that that person can't do anything, thinking that that person can't do anything, because the argument is going to be exactly what the court is suggesting, that there's no case. Counsel, doesn't Illinois counsel know the Supreme Court case suggests that's a risk to lay related hardships that are associated with voluntarily participating in Medicare? I mean, that seems to me to be your complaint, and the court has spoken directly to that, and it's basically, look, this is a massive government bureaucracy, deal with us or don't. And I don't think that someone can refuse to serve Medicare patients when the business that they're in is selling wheelchairs. But the business they're in is serving Medicare or Medicaid, right, excuse me. So I mean, that's a bit of a circular argument, right, I mean they've chosen to be in that business. She did, Your Honor, and she has a right to be in that business. I mean, I certainly, I can sympathize with folks who are in that situation. When you have these sort of government delays, I think all of us have probably experienced one sort or another, but Supreme Court case law suggests, look, when you get into that business, that's a risk that you assume. Well, that's what I want to hustle over to. I think the courts write that everybody, no matter whether your only client is the government or your only client is a certain business, that you take a risk that when they cut you off, your business is going to be cut off. But the difference here is that we're dealing with an agent of the government, the private contractor, and their acts are governed by the Constitution of the United States, and the Constitution of the United States requires a hearing before a property right can be taken away and requires substantive due process before it can be taken away. All right, so what is the property right here, and what is the substantive due process claim that you've got? Okay, well, property right is in my client's Medicare provider number or license to bill. But that's subject to certain conditions, is it not? It's not subject to a condition that it won't be taken away without a hearing. Well, is it that are hearings provided? I mean, it's clear to me that you could have sued for the overpayment, correct? The hearing will not happen for three and a half years. Could you have sued for the overpayment claim? We could have appealed the overpayment determination to a federal administrative law judge who sits on- And then sued in federal district court, correct? And then after the federal administrative law judge makes a determination, could have brought the federal version of mandate in federal district court, if we were still in business, but we're no longer in business. And to- Let's say you have an administrative. Let's say you have a bad actor who is over-billing the government. The government has to subsidize that business in the interim while the litigation continues? Please, your honor, let's not say that because there's no such- Well, I just said that. It's a hypothetical situation. I'm not asking you to concede that on the basis of your client, but your suggestion is that your client has a right to retain business during that interim, that property right. And I think there's a Supreme Court case, I'd have to take a moment to look at the brief, that calls out an exception when the Department of Justice and the United States Attorney's Office is investigating a Medicare provider for actual fraud. And there is actual evidence- But we don't have actual fraud. We're talking about overpayment here, right, in a plaintiff's lawsuit. It's a documentation issue. What the- So is your argument that Medicare has to continue paying during the course of that internal investigation and that the Constitution prohibits a suspension, an interim suspension, while the investigation proceeds? That's exactly the argument. Without a hearing- What's your case for that? Well, your honor, I'm hoping this is the first case for that. Well, okay. Fair answer. But I haven't found one because I've looked for one, but I haven't seen one that says that. Correct. The fact of the matter is that the government has put my clients out of business without a hearing. And if someone in certain circumstances can't lose a job without a hearing, or can't have a hearing, doesn't have to pay back taxes without a hearing, this particular administrative agency in the United States doesn't have the type of protections for the people it does business with like other administrative agencies of the United States. And the only thing we have to rely upon is the Constitution. My client is not being accused of fraud, as indicated in the record. My client is being accused of not having sufficient documentation for the services rendered. These were all real Medicare beneficiaries. They all really needed the home healthcare and DME. They all got it. What the carrier is saying is that my client's documentation wasn't good enough. And for that, they're put out of business. And that's happening to a lot of doctors as well, whose documentation is being accused of being insufficient, and they're being put out of business. Many of these doctors have nothing but Medicare beneficiaries as their patients. Like a podiatrist, for instance, who does a lot of diabetic wound care, or a gerontologist, or a hospitalist, who sees nothing but Medicare patients, largely. So what I'm urging the court to do is to adopt a standard of behavior for the Medicare administration through its private contractors. And that standard of behavior is that before you all put my clients out of business, we want a hearing. That's all we're asking. Counsel, a question, a factual question, and I'm not finding the answer in the part of the record that I'm looking at, and currently I'm paging through the complaint. But as I understand it, the suspension of payments was January 2018, and a demand letter for overpayment was issued on August the 1st, 2018. Your lawsuit, or your action here for declaratory judgment was June the 5th of 2019. Does the record disclose or explain the delay? What was going on during that interim time, and why that delay in the filing of the complaint? During the time of suspension and the time of the filing of the complaint? Yes. Oh, I don't think, to directly answer the court's question, I don't think the record addresses that. I think the client was attempting to decide how to handle the situation, because I don't think she takes filing a lawsuit lightly. I think that it just takes time for someone to decide what to do, especially when they're going through the shock of losing their livelihood. Well, I just asked the question because part of your argument is that this was a devastating action and the rights of the health center were violated in a very grievous way, and that there weren't any limited number of things that could be done about it, but yet we have this substantial delay in attempting this particular action, and you seem curious to me and somewhat contrary to the argument that's being made. I understand. I'd be happy to look into it deeper and provide the court in a letter why there was that delay, but my recollection is that the fact that she lost her business and now needed to figure out how to support herself and what she was going to do with her employees caused a delay. She didn't rush into court. She doesn't take this action lightly. What I really want to say is that if this type of scheme is upheld, then really only large companies and large businesses like the big box stores will be able to serve Medicare beneficiaries, and the small businesses in the small towns and even in the large towns that serve Medicare beneficiaries and want to have that relationship with their patients and want to do everything they can for them will be put out of the marketplace because they simply can't. Counsel, just to be clear, with Judge Shepard's permission, you want us to impose by judicial order a hearing requirement that's not in statute. Is that a fair summary? It's fair, but it's not accurate. I would like the court to establish a standard. Well, the standard would require, I think you mentioned, a hearing, right? Absolutely. Okay, that's my question. In fact, Mr. Goyer, you're asking for a pre-deprivation hearing, just like prisoners ask for. Same thing, Your Honor. I don't think that's too much to ask for. All right. Okay, Mr. Goyer, thank you for your argument. Ms. Lilly, you may proceed when you're ready. Thank you, Your Honor. Jamie Lilly for the federal government. Your Honor, this court's precedent in Clarinda Home Healthcare establishes that plaintiff's claim for a hearing prior to the temporary suspension of its benefits is not a culpable claim, and that plaintiff must channel this claim through 405G, through the Medicare administrative proceedings. Plaintiff concededly did not do so here, even though there's no legal barrier to plaintiff having challenged the overpayment determination, even after it ceased operations. Counsel, do you think ... I take your point that Clarinda Health so holds. Is there a Supreme Court case that does as well, or is it simply Clarinda Health you're relying on for that point? Clarinda is the case closest to the facts here, where the plaintiff there challenged precisely the same benefit suspension. Yeah, I agree. In other words, is it our own precedent that compels that result, or is it a Supreme Court precedent? My read is it's Clarinda Health probably that's directly on the point. Clarinda is directly on the point, but ... Not that I can do anything about either, if I wanted to, but ... Yeah, nor have plaintiffs asked. The distinctions they've made in Clarinda ... Your access code was not recognized. Attempts to distinguish Clarinda here are unabateling for the reasons stated in our brief, and therefore we ask that this court affirm the judgment of the district court. All right. Well, before we return to Mr. Corey, I do have one question in light of the argument that he made in talking about remedies and the time period involved. In the government's view, what is the remedy for a healthcare provider in the position of regional home healthcare if there is a suspension of payments, which brings a devastating blow, a devastating interruption to business in the case of a small provider? What's the immediate remedy that that provider could avail itself of, which could potentially save itself the end of its business activities? Your Honor, there may be business decisions that a business owner can make in organizing her business in advance to deal with these sorts of business interruptions, but the remedy at issue here is appealing the decision that the business was overpaid $1.2 million. Plaintiff did not ... That's going to take months, correct? So that really doesn't address Judge Shepard's question. That is, what does a small business do in the interim during the months or years of dependency of that federal claim? Is there not a property interest at stake here? Your Honor, this court and Clorinda, in considering precisely the same types of injuries claims to property or business interest, found that there was no culpable constitutional claim. So any remedy associated with any delay-related hardship in the Medicare system is going to be seeking some sort of solutions in the private market and how you can manage your business. Do we have the authority to institute some sort of pre-deprivation hearing, as Judge That was not his suggestion, but he mentioned the term. No, Your Honor, because this court rejected that there was a culpable claim to that type of hearing in Clorinda Home Healthcare. So I believe that under this court's binding precedent, it lacks authority to do what Clorinda said it would not do. That plaintiff must channel an exhaust through the Medicare system, and the way to go about obtaining funds is to challenge the decision that it was overpaid by $1.2 million, and that if it's successful in doing that, the temporary suspension will be lifted, and the plaintiff will be entitled to whatever amounts that the administrative system, or even on judicial review of that decision, the court determines it was entitled to. But here, plaintiffs have not disputed that it was overpaid by $1.2 million, and the loss of that business has not been challenged through the administrative system, and nor has it explained that there is any legal barrier to do so. I hope that that has answered your question, Your Honor. And in this case, was the remedy more illusory than actual? Apologies, Your Honor. The remedy that plaintiffs... The remedy being a successful appeal through the labyrinth, I can't pronounce that word, procedure. In other words, is it an illusory remedy for a small medical provider as compared to these in Tennessee that do hundreds of billions of dollars worth of work? Your Honor, we have no reason to believe that the remedy is illusory at all, and in fact... Well, in fact, was it illusory here? Apologies for the interruption. If the person... If the remedy is so time-consuming and costly, is it really a remedy? Your Honor... If that's the way it is, that's the way it is. Those who deal with the government have to abide by the rules. To put it more starkly, we have to sing his song, whose bread we eat. Yes, Your Honor, and the Supreme Court has acknowledged that there are delay-related hardships, and that that is part of a system that is administering millions of claims and paying billions of dollars in Medicare claims, that there will be time involved in the decision to appeal one of these determinations or any of these determinations, and that hardship is inherent in the system. But no, it doesn't mean that the administrative remedy is illusory. If plaintiff felt that it was entitled to $1.2 million that it had taken of taxpayer funds, it could have challenged that through the administrative process, and there are decisions, overpayment decisions, that are overturned at each stage of the process and even upon review in district court. So, no, we don't believe the remedy is illusory. Okay. All right. Thank you, Ms. Lilly. Thank you. Mr. Corey, Ms. McKee, how much, well, I see you've used all your time. Mr. Corey, Ms. Lilly didn't use all of her time. Take a couple of minutes and respond. Sure, Your Honor. As the old saying goes, time goes by quickly when you're having a lot of fun, and I am. Two points. Number one, what the government wants you to do is choose, if you're a small business, do I want to go out of business and then exhaust my administrative remedies that put you in this situation where you have to go out of business? Well, counsel, if I'm doing business with Amazon, it's the same deal, right? In other words, if you want to do business with a big fish and you're small, you know when you're going to get outlitigated, you may win ultimately, but you may not survive the 24 months it takes, right? And isn't that what the Supreme Court has said about these sort of massive federal programs? That's what's sad about where we are today. Well, I don't know if it's sad, it's just the way the market works, right, including the market with the government. Look, if Amazon's opening a warehouse in Sioux Falls sometime this year, if I want to start delivering packages and they stop paying me, I'm going to have to sell my van. And the question is, is the court going to encourage the government to adopt policies that will force small business out of serving... Well, it seems to me the government already has those policies, right? The question is whether we have authority to preempt those. And I'm not saying... I think you indicated there's no case you can cite. The only thing I can cite is the constitutional requirement for a hearing before my property is taken away. Clorinda, I was mistaken, it's an Eighth Circuit case. I was never a law review type. But the way I read that case is, before you don't have a right to a hearing, you've got to be investigated for fraud by a prosecuting agency like the United States Attorney's Office, the FBI, the law enforcement division of the OIG, and there's a compelling interest to keep people from billing who are being investigated for fraud. There's never been an allegation of fraud against my client. The fact of the matter is that if documentation isn't sufficient, whether or not services are medically necessary, Medicare is going to deny the claim. And so I urge the court to reverse the dismissal of my client's complaint and allow her to have a hearing before her right to bill Medicare was taken away. Alright. Thank you, Mr. Corey. And thank you, counsel, for your arguments. If the case is submitted, the court will render a decision in due course.